Grafton,
June 4, 1946. } No. 3588.

MILFORD S. MORGAN *v.* SIDNEY J. MORGAN.

*Edmund W. Ogden* (by brief and orally), for the plaintiff.

*Robert G. Wakefield* (by brief and orally), for the defendant.

BRANCH, J. The decree entered herein must be set aside because it is incompatible with the facts found by the Court. In the findings it is said: "The Court believes that the plaintiff's testimony as to the agreement between him and his father is true, and . . . that the plaintiff is not guilty of laches." The testimony of the plaintiff as

to the agreement between him and his father is summarized in his brief in part as follows: "My father came up and stayed with me a while on Beech Hill, and he spoke to me about the farm over there; it had been abandoned by the man that had it, and he wanted to know if I wouldn't give up my place there and go over and live on the farm in Holderness, and he said that he believed at that time that he held a first mortgage, instead of Mr. Pulsifer, but he didn't. . . . I did tell him if he would buy the first mortgage from Mr. Pulsifer, then I would go on the farm and pay him the price of the first mortgage. . . . And he said he would, and we went over two days and talked with Mr. Pulsifer, and he was very willing and we finally agreed on the $330 as the purchase price of his mortgage. . . . My father told me that as quick as they had time to foreclose, he would present me with a mortgage, that I was to sign, for $330, which was to carry no interest, and I could pay as convenient, and he would give me the deed to this property." This of course involved an implied declaration of defendant's intention to perform his undertakings.

Defendant's version of the agreement between him and the plaintiff was utterly inconsistent with the foregoing. "I told Milford I would permit him to live in the premises as my agent in possession after entry to take possession under my mortgage, for the purpose of protecting the property, but on the condition that I live there, and that the premises be maintained as my home. Milford said that was all right."

The Court having found that the plaintiff's version of the agreement between the parties is true and the defendant having testified to an entirely inconsistent arrangement, it is a compelled conclusion that the defendant at the time the contract was consummated did not intend to carry out the agreement which the Court finds that he made. The defendant thus undertook to defraud the plaintiff. "When a promise is made with intention not to perform it, the promisor is guilty of misrepresentation." 5 Williston, Contracts, s. 1496; Restatement, Contracts, s. 473. "It is . . . well settled in this jurisdiction that one who purchases and secures delivery of goods with an intent not to pay for them, commits a fraud upon the vendor." *Gitterman & Co.* v. *Company*, 87 N. H. 335, 337, and cases cited.

"One who fraudulently misrepresents himself as intending to perform an agreement which he makes with the recipient of the misrepresentation, is subject to liability under the rule stated in this section whether the agreement is enforceable or unenforceable as a contract." Restatement, Torts, s. 530, *comment* b.

The case, therefore, presents itself as one in which the defendant seeks to invoke the statute of frauds for the purpose of consummating the fraudulent purpose which he entertained at the time the agreement with the plaintiff was entered into.

To such a situation the statute of frauds has no application. It is governed rather by the principle that "A person who has tortiously acquired or retained title to land, chattels, or choses in action, is under a duty of restitution to the person entitled thereto." Restatement, Restitution, s. 130. The right here recognized is an equitable one, normally enforceable by a bill in equity to impress upon the property a constructive trust, (see Restatement, Restitution, ss. 160-215) which is the basis of the plaintiff's argument in the present case. Relief in such cases is not granted by an order enforcing the terms of a contract in disregard of the statute, but by a decree recognizing and enforcing an independent and distinct equity which has arisen from the conduct of the parties. 2 Lawrence, Equity, s. 786.

The case was tried upon the theory incorrectly designated as "part performance." See, 2 Lawrence, Equity, s. 782. The real basis of the plaintiff's equity set forth above was not recognized. It follows that the findings of the Court; 1, that the plaintiff has not changed his position upon the strength of the contract; 2, that he has not made substantial improvements to the property, and 3, that no other fact has been shown which takes the case out of the statute of frauds, are not decisive, although it is doubtful if they can be sustained upon the evidence. For these reasons the decree is set aside. There should be a new decree declaring that the defendant holds the property upon a constructive trust for the benefit of the plaintiff and ordering a conveyance thereof upon receipt of a mortgage signed by the plaintiff in the sum of $330 in accordance with the agreement of the parties.

It is argued by the defendant that the granting of relief in a case like the present is discretionary and that the order of the Court denying it to the plaintiff cannot be reviewed here. It is, therefore, necessary to point out, as other courts have repeatedly done in the past, that "judicial discretion as habitually employed simply means that the case before the court is governed, not by legal rules, but by some well established equitable principles." 1 Lawrence, Equity, s. 257.

*Decree for the plaintiff.*

MARBLE, C. J., was absent: JOHNSTON, J., dissented: the others concurred.